UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

EDWARD BOAKYE,

                    Petitioner,                    09 Civ. 8217

        -against-                                    OPINION

UNITED STATES OF AMERICA,

                    Respondent.

------------------------------------X

A P P E A R A N C E S:

            Pro Se

            EDWARD BOAKYE
            49583-054
            Federal Correction Institution
            P.O. Box 5000
            Greenville, IL  62246


            Attorneys for Respondent

            PREET BHARARA
            United States Attorney
            Southern District of New York
            86 Chambers Street
            New York, NY  10007
            By:  Brian A. Jacobs, Esq.

**Sweet, D.J.**

Edward Boakye (the "Petitioner" or "Boakye") has moved to vacate, set aside or correct his sentence pursuant to Title 28, United States Code, Section 2255 (the "Section 2255 motion" or "Petition") because of ineffective assistance of counsel resulting from counsel's failure to advise Petitioner that Petitioner's deportation was an "automatic" consequence of a guilty plea, as opposed to merely a "possible" consequence.  Upon the facts and conclusions set forth below, the Section 2255 motion is denied.

## Prior Proceedings

On March 22, 2005, Petitioner was charged together with four codefendants in a three-count Superseding Indictment, S1 04 Cr. 1148.  Count One charged Petitioner and three codefendants with conspiracy to import into the United States one kilogram and more of heroin, in violation of Title 21, United States Code, Section 963, from July 2004 through August 20, 2004.  County Two charged Petitioner and three codefendants with conspiracy to distribute and possess with the intent to distribute one

1

kilogram and more of heroin, in violation of Title 21,
United States Code, Section 846, from July 2004 through
August 20, 2004. Count Three charged two codefendants, but
not Petitioner, with conspiracy to conduct and attempt to
conduct financial transactions designed to conceal and
disguise the nature, location, source, ownership and
control of the proceeds of specified unlawful activity, in
violation of Title 18, United States Code, Section 1956(h),
from about July 2004 through about August 2004.

On September 30, 2005, Petitioner pleaded guilty
before Magistrate Judge Henry B. Pitman to Counts One and
Two of Superseding Indictment S1 04 Cr. 1148, pursuant to a
written plea agreement with the Government dated September
30, 2009.

The plea agreement provided, in part, that the
Government would accept a guilty plea from Petitioner to
Counts One and Two of the Superseding Indictment, and that
in consideration of that plea, Petitioner would not be
further prosecuted for (1) participating in a conspiracy to
import one kilogram and more of heroin from in or about
July 2004 up to and including on or about August 20, 2004,
as charged in Count One, and (2) participating in a

2

conspiracy to distribute and possess with intent to
distribute, one kilogram and more of heroin from in or
about July 2004 up to and including on or about August 20,
2004, as charged in Count Two. The parties stipulated that
Petitioner's sentencing range under the United States
Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was
108 to 135 months' imprisonment. Because the minimum
sentence allowed by statute for the offense to which
Petitioner pleaded guilty was 120 months, however, the
parties stipulated that Petitioner's sentencing guidelines
range was 120 to 135 months.

During the plea proceeding on September 30, 2005,
Magistrate Judge Pitman conducted a plea allocution that
conformed with Rule 11 of the Federal Rules of Criminal
Procedure in all respects. At the plea proceeding,
Petitioner was represented by Harvey Fishbein, Esq.
("Fishbein") who had been appointed on April 26, 2005, to
replace Petitioner's previously appointed counsel.
(Declaration of Harvey Fishbein dated November 19, 2009
("Fishbein Decl.") ¶ 1).

With respect to the Defendant's satisfaction with
his counsel, the Court asked whether Petitioner was

3

"generally satisfied with Fishbein's representation" and

"with the advice he has given," and the Petitioner answered

"yes, your honor." (Plea Transcript dated September 30,

2005 at 7).

With respect to the immigration consequences of

the guilty plea, the following colloquy took place:

THE COURT:          . . . Mr. Boa[ky]e, because a plea to a
                    felony can also have immigration
                    consequences for individuals who are
                    not United States citizens, let me ask
                    you, are you a United States citizen?

THE DEFENDANT:      No, your Honor.

THE COURT:          Okay. Do you understand that another
                    possible consequence of your plea here
                    is that you might be deported or
                    removed from the United States, and you
                    might be prohibited from every
                    reentering the United States; do you
                    understand that?

THE DEFENDANT:      Yes, your Honor.

In an Order dated October 24, 2005, Petitioner's

guilty plea was accepted.

In a letter dated April 23, 2006, Petitioner

wrote to Fishbein and asked that he "research the

feasibility of a '5K2.0' proposal, Agreement To Voluntary

4

Deportation" and requested that he "prepare and file the appropriate motion concerning this before my sentencing date." (Fishbein Decl. ¶ 4 & Attachment (Emphasis in Original)). Fishbein did not make the requested motion because Petitioner's "plea agreement precluded a downward departure motion and because the recommended sentencing guidelines range in the plea agreement and the Presentence Report was already at the mandatory minimum of 120 months." (Fishbein Decl. ¶ 4).

Shortly thereafter, Fishbein met with Petitioner and Petitioner "demanded" that Fishbein make a motion to withdraw Petitioner's guilty plea on a number of grounds, none of which related to the immigration consequences of the plea. (Fishbein Decl. ¶5). Fishbein's disagreement with Petitioner regarding a motion to withdraw Petitioner's guilty plea led Fishbein to withdraw as counsel for Petitioner. (Fishbein Decl. ¶ 5). In an Order dated May 9, 2006, the Court approved the substitution of attorney Susan V. Tipograph, Esq. ("Tipograph") for Fishbein.

On November 6, 2006, Tipograph submitted a letter to this Court requesting "the lowest sentence the Court considers reasonable under the circumstances." The letter

5

specifically stated that "Mr. Boakye will most certainly be deported upon completion of any sentence.  He will not contest any deportation and looks forward to returning to Ghana as quickly as possible."  (Id.)

On November 13, 2006, the Court issued a Sentencing Opinion (the "Sentencing Opinion") stating that Petitioner would be sentenced to 120 months' imprisonment on Counts One and Two, to run concurrently, five years' supervised release, and a $200 special assessment, subject to modification at the sentencing proceedings schedule for that same day.  At those sentencing proceedings, the Court sentenced the defendant as set forth in the Sentencing Opinion.  Judgment was entered November 16, 2006.

On November 22, 2006, Petitioner, through counsel, filed a timely notice of appeal.  Tipograph moved for permission to withdraw as counsel pursuant to Anders v. California, 386 U.S. 738, 744 (1967), and the Government moved for summary affirmance.  In a Mandate issued June 3, 2008, the United States Court of Appeals for the Second Circuit granted both motions.

6

Petitioner filed the instant timely motion
pursuant to Title 28, United States Code, Section 2255, on
or about August 12, 2009 and it was marked fully submitted
on November 24, 2009.

**The Facts**

The Petitioner was born in Ghana and has been a
permanent resident of the United States since 1996.
(United States Probation Department's Presentence
Investigation Report ("PSR") ¶¶ 66, 68)). Pursuant to
Title 8, United States Code, Section 1227(a)(2)(A)(iii),
"[a]ny alien who is convicted of an aggravated felony at
any time after admission is deportable." An "aggravated
felony" for purposes of determining immigration status
includes an offense of "illicit trafficking in a controlled
substance." 8 U.S.C. § 1101(a)(43)(B). In this case,
Petitioner pleased guilty to a drug trafficking offense,
and was thus deportable. The PSR specifically noted that
Petitioner was subject to removal proceedings. (PSR ¶ 68).

**The Applicable Standard**

7

Petitioner has contended that he did not receive effective assistance of counsel because at his plea proceeding, both his counsel and the Court said, in effect, that Petitioner "might" be deported, instead of informing Petitioner that deportation would be "automatic" following his conviction.  (Petitioner's Brief dated August 12, 2009 ("Pet. Br.") at 7-9).

A claim that defense counsel was ineffective in the context of a guilty plea is evaluated under the two-part standard set forth in Strickland v. Washington, 466 U.S. 668, 687-88, 693 (1984); Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  To prevail, Petitioner must (1) show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice." Strickland, 466 U.S. at 687-88, 693; accord Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001); Cullen v. United States, 194 F.3d 401, 403 (2d Cir. 1999).  Only if both of these elements are satisfied can the Petitioner demonstrate that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Strickland, 466 U.S. at 687.

In the context of a claim of ineffective
assistance of counsel premised on a Petitioner's lack of
knowledge of the immigration consequences of his guilty
plea, the Supreme Court has recently held that
"constitutionally competent counsel [will advise a
defendant] that his conviction . . .[makes] him subject to
automatic deportation . . . [when] the terms of the
relevant immigration statute are succinct, clear, and
explicit in defining the removal consequence for [his]
conviction." Padilla v. Kentucky, No. 08-651, 2010 WL
1222274, at *3, *8 (U.S. Mar. 31, 2010). The Court in this
decision did away with the distinction that existed in some
circuits, including this one (see United States v. Couto,
311 F.3d 179, 188 (2d Cir. 2002)), between affirmative
misrepresentations by counsel and the failure to provide
correct advice on the immigration consequences of a guilty
plea or conviction. Padilla, 2010 WL 1222274, at *9.
("[W]e agree that there is no relevant difference between
an act of commission and an act of omission in this
context." (internal citations and quotation marks omitted))

Even if the first prong of the Strickland test as
applied by Padilla to immigration-related legal advice is
met, a Petitioner still must satisfy the second prong of

9

the Strickland test by "affirmatively prov[ing] prejudice." Strickland, 466 U.S. at 693. See Padilla, 2010 WL 1222274, at *3 ("Whether [Petitioner] is entitled to relief depends on whether he has been prejudiced, a matter that we do not address here.") To demonstrate prejudice with respect to a decision to plead guilty, the second part of the Strickland analysis required Petitioner to show that there is "'a reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial.'" United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002)(quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

The Supreme Court has noted that the "object of an ineffectiveness claim is not to grade counsel's performance," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697. Applying this teaching, the Second Circuit has often rejected ineffectiveness claims by determining that, in view of the strength of the prosecution's case, the defendant is unable to establish prejudice. See, e.g., United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991) ("[G]iven the plethora of evidence

10

against [appellant] there is little reason to believe that alternative counsel would have fared any better."); United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990) (although counsel's performance at times fess below professional standards, Sixth Amendment claim fails "given the overwhelming evidence against [the defendant]").

## **The Advice Of Counsel, If Given as Petitioner Has Alleged, Was Unreasonable**

The Petitioner has contended that during his plea colloquy, when the Court advised him that "another possible consequences of your plea here is that you might be deported," the Court's use of the words "possible" and "might" misled the Petitioner, where the Petitioner was actually subject to "automatic" deportation. (Pet. Br. at 7). Further, he has contended that his counsel was ineffective by "remain[ing] silent when the defendant was being misinformed by the presiding judge," and by "mislead[ing] him to believe that by being married to an American and being convicted of a non-violent crime w[ere] all factors that the immigration court would consider in his favor." (Pet. Br. at 7-8).

11

"When the law is not succinct and straightforward
. . . a criminal defense attorney need do no more than
advise a noncitizen client that pending criminal charges
may carry a risk of adverse immigration consequences.  But
when the deportation consequence is truly clear, as it was
in this case, the duty to give correct advice is equally
clear."  Padilla, 2010 WL 1222274, at *8.  As did Padilla,
Boakye pleaded guilty to a statute which made clear that an
admission to it made him "deportable."  8 U.S.C. §
1227(a)(2)(A)(iii).  Therefore "his deportation was
presumptively mandatory" and Fishbein had an obligation to
indicate as much to him.  Padilla, 2010 WL 1222274, at *8.

Petitioner also argues that Fishbein's silence
during his plea proceeding was ineffective assistance.
During the proceeding, Magistrate Judge Pitman told
Petitioner:  "Do you understand that another possible
consequence of your plea here is that you might be deported
or removed from the United States, and you might be
prohibited from ever reentering the United States; do you
understand that?"  (Exhibit C at 14).  Petitioner replied,
"Yes, your Honor."

12

Magistrate Judge Pitman's question is phrased in
standard terms addressed to defendants at plea proceedings
regardless of their immigration status in the United
States.  It is not intended to address the consequences of
pleading guilty to a specific statute, but rather to make
sure that the defendant is aware that there may be
immigration consequences to a plea if the relevant statute
suggests such consequences.  It is clear from the colloquy
transcript, in which he asks Petitioner whether or not he
is a United States citizen, that Magistrate Judge Pitman is
not advising Petitioner of the specific immigration
consequences his guilty plea, but rather ensuring that as a
general matter Petitioner is aware that there are potential
immigration consequences for non-citizens who plead guilty
to certain crimes.  Magistrate Judge Pitman's question was
therefore not an improper phrasing of the law, and
Fishbein's silence during the plea proceeding does not
inform the decision of whether his assistance to Petitioner
overall was ineffective.

If Boakye's allegation as to Fishbein's advice on
the immigration consequences of his guilty plea, which

Fishbein disputes,[1] is true, it would amount to unreasonable
conduct under Padilla.  However, no determination as to the
factual dispute over what advice was actually given is
necessary because Petitioner does not establish a showing
of prejudice as required under the second prong of
Strickland.

## Prejudice Has Not Been Established

Even if Petitioner has satisfied the first prong
of Strickland, he cannot satisfy the second prong of the
Strickland test by "affirmatively prov[ing] prejudice."
Strickland, 466 U.S. at 693.  Even if Petitioner's counsel
affirmatively misled him in advance of his guilty plea,
Petitioner has established the requisite prejudice to have
his conviction vacated.  The Petitioner has alleged that
had he known that "deportation was automatic . . . [he]
would have went to trial."  (Pet. Br. at 9).  Petitioner
has not established any probability that he would actually
have insisted on going to trial had he known of the precise
immigration consequences of his conviction.

---

[1] According to Fishbein, he never made the statements Petitioner claims
he made but rather "at all times described the crime charged as an
aggravated felony which would lead to Petitioner's deportation."
(Fishbein Decl. ¶ 3).  Because this factual dispute is not dispositive
of the motion, it does not require resolution.

Petitioner's own memorandum in support of his motion has acknowledged the evidence that supports his convictions. Petitioner's memorandum acknowledges that he "discussed the importation and distribution of narcotics from Ghana" with his co-conspirators (Pet. Br. at 3 (citing PSR ¶ 9)), that he "traveled to Maryland to sell narcotics" after being released from prison in July 2004, that he returned to New York after selling narcotics in Maryland and paid a co-conspirator with "the proceeds from his narcotics transactions" (Pet. Br. at 3 (citing PSR ¶¶ 17-[21])), and that "a series of telephone calls" between August 1, 2004 and August 12, 2004 "evidenced that the defend[a]nt was outside the New York area completing Narcotics transactions" (Pet. Br. at 3 (citing PSR ¶¶ 3032, 35)). Had the Petitioner proceeded to trial, he would have faced the extensive evidence of his guilt catalogued in his own memorandum and in the PSR, including recordings of incriminating phone calls the Petitioner placed while incarcerated (PSR ¶¶ 8-14), and recordings of additional incriminating calls made after the Petitioner was released from prison pursuant to a Title III wiretap (PSR ¶¶ 15-38).

15

In addition to facing a strong Government case against him at trial, Petitioner also would have lost the substantial benefit resulting from his plea. Pursuant to the Guidelines, without receiving the three-point reduction for acceptance of responsibility Petitioner earned by pleading guilty, his Offense Level would have been 32. In criminal history category III, Petitioner would have faced a Guidelines range of 151 to 188 months' imprisonment. By pleading guilty and accepting responsibility, Petitioner reduced his Adjusted Offense Level to 29, for a Guidelines range of 120 to 135 months' imprisonment (after accounting for the statutory mandatory minimum sentence of 120 months), and was sentenced to 120 months' imprisonment.

Further, the correspondence in this case contradicts Petitioner's claims. In a letter dated November 6, 2006, Petitioner's counsel at that time, Tipograph, wrote in advance of sentencing that "Mr. Boakye will most certainly be deported upon completion of any sentence. He will not contest any deportation and looks forward to returning to Ghana as quickly as possible." And according to Fishbein, Petitioner never "raise[d] his need to remain in the United States as the dispositive issue in

16

his decision to plead guilty or go to trial."  (Fishbein
Decl. ¶ 3).

          Petitioner offers no evidence that he would have
insisted going to trial.  The conclusory claim in
Petitioner's brief that he would have gone to trial but for
counsel's alleged ineffectiveness, standing alone, does not
establish prejudice under Strickland.  See Scott v.
Superintendent, Mid-Orange Correction Facility, No. 03 Civ.
6383, 2006 WL 3095760 at *9 (E.D.N.Y. Oct. 31, 2006)
("[C]onclusory allegations that a defendant would have
insisted on proceeding to trial are generally insufficient
to establish actual prejudice under Strickland."); Herrera
v. Hynes, No. 08 Civ. 1651, 2008 WL 5068608 at *3 (E.D.N.Y.
Nov. 21, 2008)(in the absence of "evidence showing why
[petitioner] would have risked a trial when the likely
outcome was both exposure to deportation and a substantial,
preceding custody term. . . . [petitioner] cannot raise a
claim of prejudice under the second prong of Strickland")
Zhang v. United States, 543 F. Supp.2d, 175, 185 ("Even if
Zhang had been informed that a conviction for an aggravated
felony would result in mandatory deportation, there is no
evidence that he would have chosen to proceed to trial.")

17

Accordingly, Petitioner has not shown that there
is "a reasonable probability that, but for counsel's
errors, [Petitioner] would not have pleaded guilty and
would have insisted on going to trial," Couto, 311 F.3d at
187, and thus Petitioner has not satisfied the second prong
of the Strickland test.

## An Evidentiary Hearing Is Not Required

To obtain an evidentiary hearing, Petitioner must
establish that he has a "'plausible' claim," United States
v. Tarricone, 996 F.2d 1414, 1418 (2d Cir. 1993), and must
set forth in an affidavit specific facts supported by
competent evidence, raising detailed and controverted
issues of fact which, if proved at a hearing, would entitle
him to relief.  See Machibroda v. United States, 368 U.S.
487, 494-95 (1962); Newfield v. United States, 565 F.2d
203, 207 (2d Cir. 1977).  Where "the motion and the files
and records of the case conclusively show that the prisoner
is entitled to no relief," no hearing is required under
Section 2255.  28 U.S.C. § 2255.  In particular, the Second
Circuit has made clear that no hearing is required where
(1) the allegations of the motion, accepted as true, would
not entitle the petitioner to relief; or (2) the

18

documentary record renders a testimonial hearing unnecessary. Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001).

Further, to the extent Petitioner has alleged any facts outside the record, the Second Circuit has recognized that in habeas cases "'allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" Chang, 250 F.3d at 86. In Chang, the defendant submitted a "highly self-serving" affidavit. In affirming the District Court's denial of the defendant's habeas petition without an evidentiary hearing, the Second Circuit held that:

> It was, therefore within the district court's discretion to choose a middle road that voided the delay, the needless expenditures of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a testimonial hearing. The district court reasonably decided that the testimony of Change and his trial counsel would add little or nothing to the written submissions.

Id. at 86. See also Puglisi v. United States, 586 F.3d 209, 214-17 (2d Cir. 2009).

19

Here, Petitioner has submitted a petition and
memorandum that contains only blanket statements and few
specific facts.   The only disputed issues of fact
identified by Petitioner's conclusory memorandum are
contradicted by the record and Fishbein's Declaration dated
November 19, 2009, and fail to satisfy one or both prongs
of Strickland.   As a consequence, Petitioner has identified
no real disputed issues of fact supported by competent
evidence, which, if proved at a hearing, would entitle
Petitioner to relief.

Accordingly, no evidentiary hearing is necessary.

**Conclusion**

Based upon the facts and conclusions set forth
above, the motion of the Petitioner under Section 2255 is
dismissed with prejudice.

So ordered.

**New York, NY**
**April 2/ , 2010**

ROBERT W. SWEET
U.S.D.J.

20